UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS ANTHONY MALEC, III,

       Plaintiff,                                Case No.  1:13-CV-0919

v.                                                     HON. ROBERT J. JONKER

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.
_____/

**OPINION AND ORDER RE
REPORT AND RECOMMENDATION**

The matter before the Court is the Magistrate Judge's Report and Recommendation (docket no. 19), filed on November 10, 2014.  The Plaintiff filed a set of Objections to the Magistrate Judge's Report and Recommendation (docket no. 20) on November 24, 2014.  The Defendant filed a Response to the Plaintiff's Objections (docket no. 21) on December 8, 2014.

Under the Federal Rules of Civil Procedure, where a party has objected to portions of a Report and Recommendation, "[t]he district judge . . . has a duty to reject the magistrate judge's recommendation unless, on de novo reconsideration, he or she finds it justified."  12 WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3070.2, at 381 (2d ed. 1997). Specifically, the Rules provide that:

> The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule.  The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

FED. R. CIV. P. 72(b).  De novo review in these circumstances requires at least a review of the evidence before the Magistrate Judge.  *Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). The Court has reviewed de novo the claims and evidence presented to the Magistrate Judge, the Report and Recommendation itself, the Plaintiff's Objections to the Magistrate's Report and Recommendation, and the Defendant's Response.  After its review, the Court approves and adopts Magistrate Judge Green's Report and Recommendation as modified in this Order.

On October 2, 2007, Plaintiff Malec filed applications for Social Security Disability Benefits and Supplemental Security Income Benefits, alleging that he became disabled on February 1, 2007 due to back pain, other related injuries, and feelings of anxiety, which had led him to visit various emergency rooms on multiple occasions.  (R. 15, Pl. Br. at 2–4, PageID # 880–82.)  Malec does not contest that he had an ongoing substance abuse problem.  (R. 20, Pl. Br. at 3, PageID # 967.)  After his claim for benefits was denied, Malec requested a hearing, and then appeared before an Administrative Law Judge ("ALJ").  On July 27, 2010, the ALJ found that Malec had severe impairments, but that he also had the residual functioning capacity to perform simple tasks in select work environments, and so he denied Malec's claim for benefits.  (R. 9-2, ALJ decision at 28, PageID # 57.)  Notably, the ALJ did not accept the opinions of some of the medical professionals who treated Malec.  (R. 15, Pl. Br. at 18, PageID # 896.)

The Report and Recommendation carefully examines the Plaintiff's request for review of the Commissioner's final decision, and recommends that the Commissioner's decision be affirmed.  The Court finds the Magistrate Judge's Report and Recommendation to be well-reasoned and thorough. In particular, the Court notes the careful and detailed examination of Malec's case record.  The Court agrees that the Commissioner's decision must be affirmed on the basis that the ALJ clearly

considered all relevant evidence, and because the ALJ's reasoning of how he weighed the evidence satisfies the substantial-evidence standard. To the extent that the parties dispute whether the law is clear on these points, this Court has discussed the case law and relevant standards that fully support the Magistrate Judge's Report and Recommendation.

## I.  MALEC'S OBJECTIONS

The Court's review of Malec's brief identifies two basic objections. First, Malec argues that the ALJ erred in not considering the medical opinions of those who treated Malec.  Second, Malec argues that the ALJ's finding that Malec could have performed full-time work is not supported by substantial evidence, either because the ALJ either failed to examine or improperly weighed significant medical evidence.  The Court considers in turn each objection.

**Objection #1:**  **The ALJ committed reversible error by not considering the opinions of Plaintiff's treating psychiatrist, Dr. Orellana.**

Malec argues that the ALJ committed reversible error because the ALJ did not at all consider the opinion of Dr. Orellana.  (R. 20, Pl. Br. at 4, PageID # 968.)  This is simply incorrect.  Both the Magistrate Judge and the ALJ considered what Dr. Orellana had to say.  It is true that the ALJ did not mention Dr. Orellana by name, but as the Magistrate Judge noted: "That is because the ALJ addressed the evidence generated by Dr. Orellana by its exhibit number, Ex. 20F." (R. 19, Report at 29, PageID # 959.)  The ALJ and the Magistrate Judge recited and evaluated the material generated by Dr. Orellana in detail, and the ALJ even incorporated the doctor's initial diagnosis into his conclusion.  The Court agrees with the Magistrate Judge's reasoning and finds no error.  The Court is satisfied that the ALJ considered this evidence and that no error worthy of reversal occurred. *See Gayheart*, 710 F.3d at 378.

Careful examination of the case law that addresses the requirement that an ALJ consider all of the evidence confirms this conclusion. In *Blakley*, the Sixth Circuit found reversible error where an ALJ "placed nothing on the record indicating that she considered the opinion" of a physician. *See Blakley*, 581 F.3d at 407–08. But *Blakley* is distinguishable because here the ALJ considered the physician's opinion, as is obvious by the citation to the evidence and the discussion of the diagnosis. In *Gayheart*, the Sixth Circuit implied that an ALJ's reasons for accepting or rejecting a physician's opinion cannot be well founded if "the ALJ's decision does not discuss or even acknowledge the extensive treatment notes from [a physican]." *Gayheart*, 710 F.3d at 378. But unlike the circumstances in *Gayheart*, which involved the "complete absence" of any mention of such evidence in the ALJ's opinion and no explanation, the discussion of and citation to the evidence indicates that the ALJ considered this portion of the record. *See id.* at 379. The Court therefore overrules this objection.

**Objection #2:**     **The ALJ's finding that Plaintiff could have performed full-time work is not supported by substantial evidence because the ALJ improperly weighed the medical professionals' opinions.**

As the Court observed at the onset, the parties dispute whether the law is clear on certain points, and so it will specify the standards against which it reviews the ALJ's decision. (R. 20, Pl. Br. at 3, PageID # 967.) This Court reviews the ALJ's decision under the highly deferential substantial-evidence standard. *See* 42 U.S.C. § 405(g); *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The substantial-evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decision-makers can go either way, without interference by the courts." *Blakley  v.*

4

*Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). To be sure, "an ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Gayheart*, 710 F.3d at 374. However, if substantial evidence supports the ALJ's decision and the ALJ does not violate rules or regulations, this Court defers to that finding "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Id.*

As noted above, ALJs must consider all evidence in the record, including the opinions of medical professionals, in making a benefits determination. *Gayheart*, 710 F.3d at 378. "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). "We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the [listed] requirements of any impairment(s) . . . *the final responsibility for deciding these issues is reserved to the Commissioner.*" *Id.* § 404.1527(d)(2) (emphasis added). In other words, an ALJ is not required to accept a particular medical opinion, provided that he provides good reasons as to why he is choosing not to do so.

When a case presents multiple conflicting medical opinions, such as this one, ALJs weigh opinions differently depending on whether the source is considered a treating physician or a non-treating physician. The "treating physician rule" requires the ALJ to "generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians. *Id.* at 406. A

physician is a treating physician if he has provided medical treatment to and has had an ongoing treatment relationship with the claimant. *See Blakley*, 581 F.3d at 407. The ALJ must give a treating source opinion controlling weight if two conditions are met: (1) the treating source opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) is not inconsistent with the other substantial evidence in the case record.'" *See Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2))). An ALJ must provide "good reasons" for why a treating physician's opinions fail to meet either the well-supported prong or the inconsistent with other evidence prong. *See Gayheart*, 710 F.3d at 376. "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406. Treating sources in this case would include Dr. Orellana and Dr. Harris, as well as the doctors who treated Malec when he was admitted to the Salvation Army Turning Point Program. (R. 9-2, ALJ decision at 29, PageID # 53.)

In contrast, non-treating sources are never assessed for "controlling weight." *Gayheart*, 710 F.3d at 376. "The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling." *Id.* (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). In this case, the state agency psychologists would fall under the category of non-treating sources. (R. 9-2, ALJ decision at 31, PageID # 55.)

With this standard in mind, the Court turns to Malec's objection. Malec argues that the ALJ failed to properly consider the opinions of Dr. Harris and Dr. Orellana, and that the Magistrate Judge erred in finding otherwise. (R. 20, Pl. Br. at 6, PageID # 970.) Defendant the Commissioner counters that "the ALJ was not required to consider the opinion as if it were a treating physician's opinion" and that the "ALJ did properly review the opinion." (R. 21, Def. Br. at 4, PageID # 976.) And the Commissioner also generally alleges that Malec's objections are mere resuscitations of arguments already presented to the Magistrate Judge. (R. 21, Def. Br. at 21, PageID # 977.) The Court agrees with Malec to the extent that Dr. Harris and Dr. Orellana are properly considered to be treating sources, but its agreement with Malec stops there.

As to Dr. Harris, Malec contends that the ALJ's reasons for discounting the opinion were "utterly specious." (R. 20, Pl. Br. at 6, PageID # 970.) The Court disagrees, and adopts the reasoning outlined in the Report and Recommendation. As noted above, an ALJ need not give a treating source opinion controlling weight if it is inconsistent with other substantial evidence in the case record. *See Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2))). To be sure, the conflicting substantial evidence must consist of more than just the medical opinions of non-treating doctors, such as the state agency psychologists that reviewed Malec's case file. *See Gayheart*, 710 F.3d at 377. Had the ALJ only identified the conflicting non-treating source opinions as the evidence that was inconsistent with the treating source opinions, he would not have provided "good reasons" and the Sixth Circuit's holding in *Gayheart* would have compelled this Court to remand Malec's case back to the Commissioner. *See id.*

But that is not the case. The Court directs Malec's attention to the Report and Recommendation, which reproduces the ALJ's observation that Dr. Harris's assignment of a GAF

7

of 25 would indicate that Malec's behavior is considerably influenced by delusions and hallucinations, which would seriously affect Malec's ability to function in almost all areas. (R. 9-2, ALJ decision at 30, PageID # 54.) There is ample evidence in the case record that is inconsistent with this diagnosis, which the ALJ listed: Malec goes out and drives regularly, does laundry regularly, feeds himself and provides himself personal care regularly, and so on. (R. 9-2, ALJ decision at 30, PageID # 54.) Other treating sources, namely Dr. Orellana and the treating physician at the Salvation Army Turning Point Program, did not describe Malec this way. Non-treating sources associated with the state did not believe the evidence led to this conclusion. And Malec did not require prompting during the interview process and seemed alert and functioning before the ALJ. (R. 9-2, ALJ decision at 29–30, PageID # 53–54.) A reasonable mind could find that this evidence is inconsistent with a diagnosis that indicates a seriously delusional individual. The ALJ also noted that Dr. Harris's later opinion was that Malec was logical and organized and capable of managing his benefits. (R. 9-2, ALJ decision at 31, PageID # 55.) The ALJ did not give significant weight to the opinion because the ALJ believed that Dr. Harris's reports were internally inconsistent, and on reviewing other substantial evidence in the case record, the ALJ found that Dr. Harris's reported findings were not supported by the record. (R. 9-2, ALJ decision at 31, PageID # 55.) These constitute good reasons, and this Court identifies no reversible error.

As to Dr. Orellana, Malec reiterates his objection above and suggests that the ALJ's reasons for discounting the opinion were not thorough. (R. 20, Pl. Br. at 6, PageID # 970.) To the extent Malec relies on the mentioning of the exhibit rather than his name, the Court disagrees with Malec because nothing requires the ALJ to use the doctor's name. To the extent that the parties disagree whether Dr. Orellana was a treating physician, the Court believes that he was, but finds that the ALJ

provided a discussion of his diagnosis that was satisfactory.  As noted in the Report and Recommendation, Dr. Orellana indicated that Malec's condition was improving, and a reasonable mind could reach the conclusion that the ALJ did.  There is no glaring inconsistency that was overlooked by the ALJ.  *See Gayheart*, 710 F.3d at 379.  Instead, there were several treating source opinions as well as a non-treating source opinion, their conclusions were divergent, and the ALJ relied on the opinions that he felt were supported by the record evidence.

Malec also points to the fact that Dr. Orellana provided him with a Global Assessment of Function ("GAF") score of 45 in arguing that the "clear import of the evidence from the doctor indicated that Plaintiff would not have been able to perform significant work on a regular basis." (R. 20, Pl. Br. at 4, PageID # 968.)  The Court agrees that one reasonable interpretation of the evidence leads to the conclusion that Malec reaches, but in light of the substantial-evidence standard of review, this argument is of no help.  *See Warner*, 375 F.3d at 390.  Malec himself acknowledges that "GAF scores alone will not support a finding of disability," and instead notes that when GAF scores are accompanied by evidence which supports a finding of disability, an ALJ may not dismiss the GAF scores out of hand.  (R. 20, Pl. Br. at 5, PageID # 969.)  But as this Court noted in its above discussion, the ALJ did in fact detail his reasons for weighing the evidence as he did.  The ALJ noted that the treating source at the Salvation Army Training Point program gave Malec a GAF score of 58.  (R. 9-2, ALJ decision at 29, PageID # 53.)  The ALJ also noted that a GAF score of 61 would indicate only mild symptoms.  (R. 9-2, ALJ decision at 29, PageID # 53.) That treating source observed that Malec was capable of maintaining his "activities of daily living."  (R. 9-2, ALJ decision at 29, PageID # 53.) It is true that select evidence in the record "provide[s] support for Dr. Orellana's findings that Plaintiff had significant disabilities," but it is also true that select

9

evidence in the record provides support for the ALJ's findings. (R. 20, Pl. Br. at 5, PageID # 969.) Again, the highly deferential standard of review limits this Court to determining only if the ALJ's decision falls within the "zone of choice within which the decision-makers can go either way, without interference by the courts." *Blakley*, 581 F.3d at 406. The Court finds that it does.

Finally, Malec insists that there "is absolutely no question that the ALJ and the Magistrate completely neglected to follow the rulings in *Gayheart*. This is incorrect for the reasons stated above. The Court goes on to note the significant factual differences between Malec's case and *Gayheart*. In *Gayheart*, the Sixth Circuit found that an ALJ's observation that the claimant could leave home, drive, keep medical appointments, visit friends and neighbors, shop with his wife, and attend hearings did not constitute substantial evidence which undermined the treating physician's opinion that the claimant was disabled because there was no evidence that the claimant could perform these tasks on a sustained basis. *Gayheart*, 710 F.3d at 377 (citing 20 CFR § 404.1520a(c)(2)). But the Sixth Circuit made clear that its rationale was that taking examples out of context, where the examples are clearly offset by other examples in the record, is an insufficient basis for giving a treating physician's opinions little weight under 20 CFR § 404.1527(c). *See id.* at 378. In this case, there were multiple treating source opinions that suggested levels of functionality ranging from approximately mild to seriously delusional, non-treating source opinions that suggested a moderate level of functionality, and other record evidence that suggested Malec can perform the basic "activities of daily living." (R. 9-2, ALJ decision at 29, PageID # 53.) *Gayheart* does not compel reversal in this case. It is therefore perhaps unsurprising that the Sixth Circuit has since cautioned that while *Gayheart* "helped identify "which reasons will later be found to be sufficiently good reasons on appellate review. . . the lines of demarcation are not clear, and in the

10

vast majority of cases, a position defending a final administrative decision despite its imperfections will be justified." *DeLong v. Commissioner*, 748 F.3d 723, 728 (6th Cir. 2014) (internal quotation marks omitted). Malec's objection is overruled.

## II. CONCLUSION

**ACCORDINGLY, IT IS ORDERED** that the Report and Recommendation of the Magistrate Judge (docket no. 19), is accepted for the added reasons recited in this Order.

**IT IS SO ORDERED**.


Dated:      January 20, 2015             /s/ Robert J. Jonker
                                         ROBERT J. JONKER
                                         UNITED STATES DISTRICT JUDGE